IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

Rahnald A. Gorman,

        Plaintiff,

v.                                                   Case No. 05-2160-JWL

John E. Potter, Postmaster General,
United States Postal Service,

        Defendant.

## MEMORANDUM & ORDER

Plaintiff filed suit against his current employer, the United States Postal Service asserting various claims of race discrimination, racial harassment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  This matter is presently before the court on defendant's motion for summary judgment and to dismiss one discrete claim for lack of subject matter jurisdiction (doc. 26).  As explained below, the motion is granted in its entirety.

*Procedural Posture*

Before summarizing the facts pertinent to defendant's motion, the court must explain the procedural posture of this case.  Defendant filed its motion for summary judgment and to dismiss on May 24, 2006.  After plaintiff failed to respond to the motion within the time prescribed by the court's local rule, the court issued an order directing plaintiff to show good cause why he had not responded to defendant's motion in a timely fashion and further directing plaintiff to file any response to the motion that he wished the court to consider if it found good cause.  The court

cautioned plaintiff that it would deem defendant's motion uncontested if plaintiff did not show good cause why he did not respond to defendant's motion or if plaintiff did not file a response to the motion.

Within the time contemplated by the court's order to show cause, plaintiff filed a one-page pleading in which he apologizes for failing to respond to defendant's motion and asserts that he is declining to file a substantive response to the motion because he no longer has access to a personal computer and is unwilling to utilize a computer at a local library due to privacy concerns.  Based on plaintiff's response, defendant urges the court to consider its motion uncontested and grant the motion summarily.  The Tenth Circuit, however, has instructed that "a party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).  Rather, the district court must still determine that judgment for the moving party is "appropriate" under Rule 56. *Id*.[1]  Summary judgment, of course, is appropriate "only if the moving party demonstrates that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Id*.

Nonetheless, because plaintiff has declined to respond to the motion, he has waived the right to controvert the facts asserted in defendant's motion for summary judgment. *Id*.  Thus,

---

[1]In the alternative, the court may, in some circumstances, dismiss plaintiff's complaint or enter judgment against him as a sanction for failing to respond to the motion for summary judgment. *See Reed*, 312 F.3d at 1196.  The court declines to follow that approach in this case because, although he has not demonstrated good cause for his failure to respond to the summary judgment motion, plaintiff has not demonstrated the total disregard for the judicial process that typifies the situation in which such sanction is usually imposed.

in analyzing defendant's motion, the court accepts as true all material facts asserted by defendant and properly supported in its motion. *Id*. But only if those facts entitle defendant to judgment as a matter of law may the court grant summary judgment. *Id.*

*Facts*

In light of plaintiff's decision not to respond to defendant's motion for summary judgment, *see* discussion *supra*, the court accepts the following facts asserted by defendant and properly supported in its motion as true. Plaintiff, an African-American male, was hired by defendant in 1996 and the first five years of his employment passed without incident. In 2001, plaintiff became an automation clerk, also known as a mail processing clerk, and he retains that position today. During the time period relevant to this case, plaintiff worked as a mail processing clerk at defendant's Processing Distribution Center in Kansas City, Kansas.

As a mail processing clerk, plaintiff is responsible for running automated machinery that sorts letter mail. Specifically, plaintiff's job requires him to remove trays of mail (already sorted by zip code) from All Purpose Containers (APCs), remove mail from the trays, load his machine with mail and feed the mail through the machine. The machine then sorts each piece of mail by location within that zip code and deposits each piece, depending on the letter's destination, in a specific bin. Once the processing is completed for one zip code, plaintiff removes the mail from the bins, puts the mail in trays according to where the mail is being sent, loads those trays back into APCs, labels the APCs and places the APCs where a machine can pull them and dispatch the mail. Thereafter, plaintiff begins processing the mail for another zip code in the

3

same fashion, continuing throughout his shift until the mail has been sorted.

In May 2003, Colleen Taylor became plaintiff's supervisor and Ms. Taylor, in turn, was supervised by Stephen Miller, defendant's Manager of Distribution Operations. Plaintiff worked under Ms. Taylor's supervision from May 2003 through November 2003 and the vast majority of his claims in this lawsuit are focused on Ms. Taylor and are based on his apparent belief that Ms. Taylor consistently treated African-American employees less favorably than she treated non-African-American employees. Plaintiff testified, however, that he is not aware of any occasion when Ms. Taylor has used a racial epithet, told a racial joke, or made any race-based remark whatsoever.

*Instructing Plaintiff to Pull an APC of Mail*

Plaintiff asserts that defendant, on the basis of plaintiff's race, instructed him to pull an APC of mail approximately 200 feet which, according to plaintiff, was beyond his physical abilities. Specifically, on June 3, 2003, Ms. Taylor instructed plaintiff to move an APC of mail into the unit because the mailhandlers, who typically moved the APCs into the automation unit, were busy. Every employee in the automation unit is required, on occasion, to push or pull an APC of mail to his or her machine–up to 200 feet. Despite this fact, plaintiff refused to pull the APC, informing Ms. Taylor and Mr. Miller that pulling an APC would aggravate his hips. Mr. Miller asked plaintiff whether he had any medical restrictions on file and plaintiff responded that he did not. Mr. Miller then advised plaintiff that without medical restrictions on file, the next time Ms. Taylor asked him to pull the APCs and he refused, he would be written up for failure

4

to follow instructions.  Plaintiff was not disciplined in any way for refusing to pull the APC on June 3, 2003.

*Plaintiff's June 10, 2003 Letter of Warning*

On June 10, 2003, Ms. Taylor issued a Letter of Warning to plaintiff for failure to follow instructions.  Specifically, Ms. Taylor learned that plaintiff had given an inappropriate instruction to employees in the unit concerning the processing of the mail.  Because the instruction involved a decision that should have been (but was not) made by a supervisor, Ms. Taylor then directed plaintiff to go to a room to discuss the incident.  Plaintiff refused.  Ms. Taylor then repeated her instruction and plaintiff again refused.  Employees who fail to follow the instructions of their supervisors are subject to discipline under defendant's progressive discipline policy.  Indeed, defendant's Employee and Labor Relations Manual states that employees must obey the instructions of their supervisors even if the employee has reason to question the propriety of the order, in which case the employee is permitted to file a protest in writing after following the instruction.

*Refusing to Permit Plaintiff to Take a Break with his Work Partner*

Plaintiff asserts that Ms. Taylor, on the basis of plaintiff's race, refused to permit plaintiff to take his break with his work partner, Shenice Bruce.  Specifically, Ms. Taylor, on June 11, 2003 and June 13, 2003, directed plaintiff not to take his break with Ms. Bruce.  On these occasions, plaintiff and Ms. Bruce were working together on one of the two "BCS" machines,

as they frequently did.  During times when the unit was experiencing a high volume of mail, the two BCS machines needed to be running continuously (and, thus, one employee had to be physically present at the machine) because the BCS machines sort all the mail into trays, which then are divided up amongst other machines, the DBCS machines.  In other words, all mail in the automation unit had to go through one of the two BCS machines first; thus, for continuous processing of the mail, a BCS machine had to be running.  During light volume periods, Ms. Taylor permitted plaintiff and Ms. Bruce to take their breaks at the same time.  On June 11, 2003 and June 13, 2003, Ms. Taylor instructed plaintiff to rotate his break with Ms. Bruce so that the BCS machine they were operating could be kept running and separating mail for the DBCS machines.

*Defendant's Alleged Failure to Address Plaintiff's Complaints of Discrimination*

On June 18, 2003, plaintiff complained to Mr. Miller that Ms. Taylor was harassing him and discriminating against him based on his race.  After listening to plaintiff's description of Ms. Taylor's conduct, and based on Mr. Miller's own knowledge and personal observations of Ms. Taylor, Mr. Miller did not believe that there was any need for him to investigate plaintiff's complaints further and he so advised plaintiff.  Afterwards, plaintiff contacted Dennis Teffner, the Manager of Human Resources for defendant's Mid America District.  Mr. Teffner told plaintiff that Rita Hamilton (defendant's Diversity Development Specialist) and Greg Perlstein (defendant's Workplace Intervention Analyst) would meet with plaintiff on June 23, 2003 to address plaintiff's concerns.

On June 24, 2003, Ms. Hamilton and Mr. Perlstein interviewed plaintiffs and his coworkers at the Kansas City, Kansas Processing and Distribution Center.  Ms. Hamilton and Mr. Perlstein also conducted a workplace climate survey.  Based upon this investigation, Ms. Hamilton found that there was no evidence of discrimination or harassment.  Ms. Hamilton, however, found that it was apparent that the extreme differences in management styles between Ms. Taylor, who enforced rules, and her predecessor, Danny Randel, who did not enforce rules, had a negative impact on the employees in the automation unit.  Ms. Hamilton also found that certain aspects of Ms. Taylor's management style could be viewed as confrontational. Indeed, many of the employees in the unit reported to Ms. Hamilton and Mr. Perlstein that Ms. Taylor was nasty, rude, insulting and demanding. Finally, Ms. Hamilton found that Mr. Miller was aware of the changes in the workplace environment but that he did not have a plan of action to help the employees adapt or to improve Ms. Taylor's supervisory skills.

Ms. Hamilton's findings were summarized in a written report to Mr. Teffner.  Moreover, on July 2, 2003, Mr. Perlstein sent an e-mail to Dennis Teffner regarding the meeting with plaintiff and his coworkers.  Mr. Perlstein relayed to Mr. Teffner the employees' concerns about Ms. Taylor and communicated that the primary issue that needed correcting in the unit was Ms. Taylor's "bedside manner."  Mr. Perlstein further advised Mr. Teffner that the investigation revealed no evidence of racial harassment or racial discrimination by management against plaintiff or any other employee in the unit.[2]

---

[2]The record also reflects that plaintiff complained to Mr. Miller on May 13, 2003 that Ms. Taylor was harassing him based on his race.  According to plaintiff, Mr. Miller told him

*Requiring Plaintiff to Work his "Sixth Day" Outside his Normal Work Area*

Plaintiff further contends that Ms. Taylor harassed or discriminated against him on the basis of his race when Ms. Taylor required plaintiff to work his "sixth day" outside his normal work area on three occasions–July 16, 2003; August 13, 2003; and August 14, 2003.  By way of background, any employee could request to be placed on the Overtime Desired List (ODL) and plaintiff, at his request, was placed on the ODL.  At management's discretion, then, an employee on the ODL could be scheduled to work a sixth day during the work week (employees were regularly scheduled to work only five days each week) and the employee would be paid overtime for work on that sixth day.  Occasionally, an employee working a sixth day may be asked to work outside their regular work unit.  Ms. Taylor, for example, would have an employee working his or her sixth day work outside the unit if the automation unit was overstaffed on that particular day and another unit needed assistance.  According to Ms. Taylor, she always moved a "sixth day" employee (who was deemed to have no seniority on that day) to another unit before moving anyone who was working a regular work day and sixth day employees were moved out of the unit in order of reverse seniority, meaning the most junior sixth day employee was moved out first.

According to defendant, then, when Ms. Taylor required plaintiff to work outside the automation unit on July 16, 2003; August 13, 2003; and August 14, 2003, she did so because the

that he was siding with Ms. Taylor, that he agreed with her and that plaintiff should get back to work.  No other action was taken about this complaint and plaintiff apparently did not pursue his complaint through other channels.

automation unit was overstaffed, another unit needed assistance and plaintiff was the junior employee working his sixth day.

*Plaintiff's August 27, 2003 Letter of Warning*

On August 27, 2003, Ms. Taylor issued plaintiff a Letter of Warning for inappropriate conduct. According to defendant, Ms. Taylor issued the Letter of Warning after plaintiff, on August 14, 2003, repeatedly interrupted the service talk that Ms. Taylor was giving to all employees in the automation unit. Plaintiff, using a disrespectful tone and speaking in a loud voice, repeatedly interrupted Ms. Taylor by accusing her of only sending African-American employees to the Automated Flat Sorting Machine (AFSM) which separated flat mail. At each interruption, Ms. Taylor advised plaintiff that she would speak to him about his concerns after the service talk–the subject of which was not the AFSM. After plaintiff's fourth interruption, Ms. Taylor ended the service talk. Plaintiff concedes that it is inappropriate to interrupt a supervisor while he or she is giving a talk to the unit.

*The Jamaican Wig*

Plaintiff also contends in this suit that Ms. Taylor discriminated against plaintiff or racially harassed plaintiff when she wore a Jamaican wig in plaintiff's presence on November 1, 2002.[3] Plaintiff concedes, however, that he never filed an EEO complaint about this incident.

---

[3]Apparently, an African-American employee had worn the wig to work the previous day for Halloween and permitted other workers to take turns wearing the wig, including Ms.

9

*Discussion*

In the pretrial order, plaintiff alleges that each and every one of the actions taken by Ms. Taylor and described above were based on plaintiff's race and that, taken together, the actions establish a pattern of racial harassment. In addition, plaintiff contends that Ms. Taylor retaliated against plaintiff for engaging in protected activity by issuing to him the August 27, 2003 Letter of Warning. In its motion, defendant moves to dismiss plaintiff's claim concerning the Jamaican wig for lack of subject matter jurisdiction and moves for summary judgment on the merits of all other claims.

*Subject Matter Jurisdiction*

A federal employee who believes he is the victim of illegal employment discrimination may bring a claim in federal district court. *See* 42 U.S.C. § 2000e-16(c); *Belhomme v. Widnall*, 127 F.3d 1214, 1216 (10th Cir.1997). As a prerequisite to suit, however, the employee "must file an administrative complaint concerning his allegations." *Belhomme*, 127 F.3d at 1216; *accord Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (any claim involving a discrete employment action must have been the subject of a charge of discrimination at the administrative level). Plaintiff testified that his claim concerning Ms. Taylor's wearing a Jamaican wig in his presence was never the subject of an administrative complaint and the documentary evidence in the record supports plaintiff's testimony. The court, then, dismisses this claim for lack of subject

---

Taylor.

matter jurisdiction.  *See Shikles v. Sprint/United Management Co.,* 426 F.3d 1304, 1318 (10th Cir. 2005) (when employee fails to exhaust administrative remedies, district court lacks subject matter jurisdiction over claim and must dismiss claim).

*Discrete Claims of Race Discrimination*

As plaintiff has no direct evidence of discrimination,[4] the court analyzes plaintiff's claims under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).  Pursuant to the *McDonnell Douglas* approach, if a plaintiff can make out a prima facie case of discrimination, the burden shifts to the defendant to demonstrate a legitimate non-discriminatory reason for the adverse employment action. *Id.* (citing *Kendrick v. Penske Transp. Servs., Inc*., 220 F.3d 1220, 1226 (10th Cir. 2000)).  If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretext. *Id.*

The court begins with plaintiff's claims that defendant discriminated against him on the

---

[4]In the pretrial order, plaintiff contends that Ms. Taylor "admitted to plaintiff that she was a racist."  In his deposition, plaintiff states that the only evidence he has to support his contention that Ms. Taylor admitted that she was a racist is an audio recording that plaintiff made (without Ms. Taylor's knowledge or consent) of a conversation that he had with Ms. Taylor.  In an abundance of caution, defendant has provided a CD of this audio recording (and all audio recordings that plaintiff made of conversations with Ms. Taylor and Mr. Miller without their knowledge or consent).  The court has listened to each of these audio recordings and, to be sure, Ms. Taylor never admits to plaintiff or remotely suggests to plaintiff that she is a racist or that she intentionally treats African-American employees less favorably than other employees.

basis of his race when it issued plaintiff two Letters of Warning, one on June 10, 2003 and one on August 27, 2003. Conceding for purposes of its motion that plaintiff has established a prima facie case with respect to these claims, defendant contends that summary judgment is nonetheless appropriate as plaintiff cannot establish that defendant's proffered reasons for issuing the Letters of Warning are pretextual. The court agrees. According to defendant, Ms. Taylor issued the June 10, 2003 Letter of Warning after plaintiff repeatedly refused to follow Ms. Taylor's instruction to go to a room to discuss a work-related incident. She issued the August 27, 2003 Letter of Warning after plaintiff repeatedly interrupted the service talk that Ms. Taylor was giving to all employees in the automation unit. Defendant has satisfied its "exceedingly light" burden to provide a nondiscriminatory reason for its decisions. *See Goodwin v. General Motors Corp.*, 275 F.3d 1005, 1013 (10th Cir. 2002).

The burden then shifts to plaintiff to show that there is a genuine dispute of material fact as to whether defendant's asserted reasons for its pay decisions are pretextual. *See Green v. New Mexico*, 420 F.3d 1189, 1192 (10th Cir. 2005). Pretext "can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *See id.* at 1192-93 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). When assessing whether a plaintiff has made an appropriate showing of pretext, the court considers the evidence as a whole. *Annett v. University of Kansas*, 371 F.3d 1233 (10th Cir. 2004) (citing *Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir. 2002)).

Plaintiff has offered no evidence of pretext.  Of course, his failure to provide a substantive response to the motion for summary judgment is a significant hurdle in defeating the motion. Aside from that, however, the record reflects no evidence of Ms. Taylor treating non-African-American employees differently than plaintiff in terms of issuing Letters of Warning.  Rather, the record reveals that Ms. Taylor issued Letters of Warning to employees of all races, including Caucasian employees, African-American employees and Hispanic employees.  There is no evidence that Ms. Taylor declined to discipline non-African-American employees for infractions similar to those committed by plaintiff.  For the foregoing reasons, summary judgment is appropriate in favor of defendant on these claims.

With respect to plaintiff's remaining claims, plaintiff must demonstrate, *inter alia*, that he suffered an adverse employment action.  *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006).  As argued by defendant in its motion, plaintiff has not presented evidence that any of the remaining acts about which he complains rises to the level of an "adverse employment action" for purposes of Title VII liability.  The Tenth Circuit liberally defines the phrase "adverse employment action" and recognizes that "such actions are not simply limited to monetary losses in the form of wages or benefits."  *See Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004) (quoting *Sanchez v. Denver Public Schools*, 164 F.3d 527, 531 (10th Cir. 1998)).  Instead, the Circuit takes a "case-by-case approach, examining the unique factors relevant to the situation at hand."  *Id*. (quoting *Sanchez*, 164 F.3d at 531).  For example, an action that causes more than de minimis harm to future employment prospects is considered an "adverse employment action."  *See id.* (citing *Berry v. Stevinson Chevrolet*, 74 F.3d 980,

986-87 (10th Cir. 1996).  In contrast, an action that amounts to no more than a "mere inconvenience or an alteration of job responsibilities" is not an "adverse employment action." *See id.* (citing *Berry*, 74 F.3d at 986-87).

With respect to plaintiff's claim that Ms. Taylor directed him to work beyond his physical capabilities by ordering him to pull an APC of mail, the record reflects that plaintiff simply refused Ms. Taylor's instruction and received no discipline whatsoever for refusing to pull the APC.  Plaintiff has not identified any negative impact that this incident had on his employment status and the record reflects that no such impact exists.  Very liberally construed, the record reflects, at the most, an oral reprimand from Ms. Taylor and Mr. Miller concerning plaintiff's refusal to carry out instructions.  Even still, no adverse employment action is present as this reprimand had no effect on plaintiff's employment with defendant.  *See Sanchez*, 164 F.3d at 533 (unsubstantiated oral reprimands are not included within the definition of adverse action absent evidence that they had some impact on the employee's employment status).  With respect to his claim that he was not permitted to take a break with his coworker on two occasions in June 2003, plaintiff again has not shown any negative impact on his employment.  *See id.*  ("not everything that makes an employee unhappy" qualifies as an adverse employment action).  Plaintiff's inability to take a scheduled break with his coworker is, at least in the circumstances of this case, a "mere inconvenience" that does not constitute an adverse employment action.  *See MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1281 (10th Cir. 2005).

Plaintiff's claim that he was required to work his scheduled overtime outside his normal work area is likewise not actionable.  Indeed, plaintiff admitted in his deposition that there is

nothing inherently negative about being sent to another unit to work overtime. Under the circumstances presented here, the three occasions on which plaintiff was required to work in another unit simply constitute a minor alteration in plaintiff's job responsibilities and do not rise to the level of an adverse employment action. *See Sanchez*, 164 F.3d at 532 ("we will not consider . . . an alteration of job responsibilities to be an adverse employment action"); *accord Aquilino v. University of Kansas*, 268 F.3d 930, 934 (10th Cir. 2001) (assistant professor's removal from dissertation committee merely altered her job responsibilities by eliminating this particular assignment in her last months of employment and, as such, did not constitute an adverse employment action).

Finally, the court considers plaintiff's claim that defendant, on the basis of plaintiff's race, failed to address plaintiff's May 13, 2003 and June 18, 2003 complaints of racial discrimination and harassment. Again, plaintiff cannot establish that he suffered an adverse employment action. Significantly, defendant's evidence with respect to the June 18, 2003 complaint, which is well supported and which the court must accept as true given the procedural posture of the motion for summary judgment, establishes that defendant did, in fact, address plaintiff's complaint and conducted a thorough investigation. In any event, even assuming defendant had ignored plaintiff's June 18, 2003 complaint and to the extent defendant failed to address plaintiff's May 13, 2003 complaint, plaintiff has not shown how defendant's inaction negatively affected his employment status. *See Duncan v. Manager, Dept. of Safety, City & County of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005) (while acts may have made the work environment unpleasant, they did not constitute adverse employment actions); *Cuenca v. University of Kansas*, 2004 WL

15

1328676, at *5 (10th Cir. June 15, 2004) (university's decision to suspend internal investigation of plaintiff's complaint in favor of outside EEOC process did not constitute an adverse employment action).

For the foregoing reasons, summary judgment is granted in favor of defendant on these claims.

*Racial Harassment*

Plaintiff also asserts that, taken together, the actions described above establish a pattern of racial harassment. To survive defendant's motion for summary judgment on this claim, plaintiff "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *McCowan v. All Star Maintenance, Inc.*, 273 F.3d 917, 923 (10th Cir. 2001) (citations and quotations omitted). In evaluating whether the alleged harassment is sufficiently severe or pervasive, the court looks at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *See Trujillo v. University of Colorado Health Sciences Center*, 157 F.3d 1211, 1214 (10th Cir. 1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The court analyzes the atmosphere both objectively and subjectively, looking at all the circumstances from the perspective of a "reasonable person in the plaintiff's position." *McCowan*, 273 F.3d at 923

16

(quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

Plaintiff falls far short of establishing the existence of a racially hostile work environment. His list of grievances–little more than a collection of unrelated incidents–includes "none of the racial comments or ridicule that are hallmarks of hostile work environment claims." *See Trujillo*, 157 F.3d at 1214. The record is devoid of evidence which would support an inference that any of the conduct about which plaintiff complains stemmed from racial animus. Significantly, plaintiff admitted in his deposition that he had no knowledge of any occasion when Colleen Taylor used a racial epithet, told a racial joke, or made any race-based remark whatsoever. Moreover, while plaintiff is quick to conclude that Ms. Taylor treated him differently based on his race, the record is devoid of evidence bearing out plaintiff's allegation. In fact, the evidence shows that Ms. Taylor issued Letters of Warning to employees of all races, including Caucasian employees, African-American employees and Hispanic employees. The evidence also demonstrates that Ms. Taylor, on occasion, required employees, regardless of race, to move APCs from one work area to another. The record also demonstrates that all "sixth day" employees working under Ms. Taylor's supervision were treated in the same manner regardless of race. Finally, the record reflects that plaintiff and his coworker were permitted to take breaks together during low volume periods and that Ms. Taylor's refusal to permit them to take breaks together was driven by high volume periods rather than plaintiff's race.

In short, the conduct about which plaintiff complains is insufficient to support plaintiff's racial harassment claim. *See id.* (affirming summary judgment for defendant on racial harassment claim where plaintiff's evidence was "insufficient to create a jury question that his

17

stressful working conditions were inflicted upon him because of racial animus"); *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (plaintiff's racial harassment claim failed where plaintiff did not show that ridicule stemmed from racial animus).  For the foregoing reasons, summary judgment is warranted on plaintiff's claim of racial harassment.

*Retaliation*

In the pretrial order, plaintiff alleges that Ms. Taylor issued plaintiff the August 27, 2003 Letter of Warning in retaliation for plaintiff's engaging in protected activity.[5]  In response to an interrogatory, plaintiff stated that the protected activity that forms the basis of this claim is his filing of a formal EEO complaint on July 23, 2003.  To establish a prima facie case of retaliation, plaintiff must show, among other things, that the individual who made the decision regarding the materially adverse action (in this case, Ms. Taylor, who issued the Letter of Warning) had knowledge of plaintiff's EEO complaint.  *See Petersen v. Utah Dept. of Corrections*, 301 F.3d 1182, 1188-89 (10th Cir. 2002) (citing *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993)). Ms. Taylor avers that she was not aware that plaintiff had filed a formal EEO complaint until

---

[5]In his deposition, plaintiff also alleged that he was retaliated against when, on August 14, 2003, Ms. Taylor informed him that he was going to be given an absence from overtime. This claim, however, does not appear in the pretrial order and, thus, has been waived.  In any event, plaintiff concedes in his deposition that he, in fact, was never given an absence from overtime with respect to that occasion and, thus, plaintiff cannot establish a prima facie case of retaliation with respect to this claim.  *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, ___ F.3d ___, ___, 2006 WL 1806605, at *7 (10th Cir. July 6, 2006) (to establish a prima facie case of retaliation, a plaintiff must demonstrate that he suffered a "materially adverse action") (citing *Burlington N. & Santa Fe Ry. Co. v. White*, --- U.S. ----, 126 S.Ct. 2405, 2414-15 (2006)).

December 2003.   As plaintiff has presented no evidence suggesting otherwise, summary judgment is appropriate on this claim.  *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1235 (10th Cir. 2000) (affirming dismissal of retaliation claim on summary judgment where plaintiff presented no evidence that decisionmaker knew of plaintiff's protected activity at time discharge decision was made); *Sanchez v. Denver Public Schools*, 164 F.3d 527, 534 (10th Cir. 1998) (same).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment and to dismiss (doc. 26) is granted.

**IT IS SO ORDERED.**

Dated this 15th day of August, 2006, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

19